## BONHAM v. THE IOWA CENTRAL INSURANCE CO.

1. Insurance: OVER-VALUATION. An over-valuation of a building by the assured in his application, will not defeat his right to recover in case of loss where the policy limits the liability of the company to two-thirds of the actual cash value of the property at the time of loss. And it seems that the right of recovery would not be destroyed by such statement of over-valuation, though the policy contained no such limitation of the company's liability, if the over-valuation was the result of a mere difference of opinion and the assured was guilty of no fraud.

2. Verdict: SPECIAL FINDING. In order for a special verdict to defeat the general one, it must be inconsistent with it ; and this inconsistency will not be presumed but must affirmatively appear.

3. Insurance: MISREPRESENTATIONS OF TITLE. Where the assured in a policy of insurance has purchased, though but partly paid for, the property, but is in possession thereof, and no lien for the purchase-

money or incumbrance is held against it, he will be regarded as holding the absolute and sole ownership of it within the meaning of those terms as used in the policy though no deed to the property has been executed to him by the grantor.

4. Special verdict: REFUSAL OF COURT TO REQUIRE. The refusal of the District Court to require a jury to return a special finding upon an immaterial fact, is not erroneous.

*Appeal from Madison District Court.*

THURSDAY, JULY 23.

ACTION upon a fire policy to recover for the loss, by fire, of the property insured.

The property, which was destroyed by the fire, and the sums insured thereon, are described and set out in the policy as follows:

" Storehouse, $200; dry goods therein, $250; yankee notions, $150; groceries, $200; boots and shoes, $175; hardware, $25."

The policy covered another building and other personal property. The application and description upon which the policy was issued, was referred to and made a part of the policy and " a warranty by the assured " by a stipulation therein contained. The following parts of the policy are only necessary to be given in order that the opinion may be understood.

" The said company hereby agrees to make good unto the assured, his executors, administrators and assigns, all such immediate loss or damage, not exceeding in amount the sum insured, nor exceeding two-thirds the cash value of the buildings as above specified, nor exceeding the actual cash value of the personal property hereby insured, * * * the amount of loss or damage, to be estimated according to the actual cash value of the property at the time of the loss," etc., etc.

VOL. XXV. — 42

ı · The policy provides that the company shall not be liable for loss or damage by fire caused by "*design or gross negligence on the part of the assured*" * * * "nor for any loss caused by gunpowder, camphene or any explosive substance;" and that "the particular property mentioned in the written portion of the policy, and the several specific amounts and kinds of property herein separately set forth, shall, in case of loss or damage, be the true amounts and kinds upon which insurance shall be claimed by the person or persons insured;" and that "any false representations by the assured of the condition, situation or occupancy of the property or otherwise, or any omission to make known any fact material to the risk, or any over-valuation, or any misrepresentation whatever, either in a written application or otherwise, shall render this policy void and of no effect;" that, "if the property above named be sold or transferred, or any change takes place in the title or possession thereof, * * * or if any incumbrance by mortgage or otherwise shall fall or be executed thereon, * * * or if the interest of the assured in the property, whether as owner, trustee, etc., is not truly stated, or if the assured shall keep gunpowder, phosphorus or saltpeter on storage, * * * without written permission in the policy, * * * · then, in every such case, this policy shall be void, and the assured shall not be entitled to recover from the company any loss and damage," etc., etc. "If the interest of the assured be any other than the entire, absolute, unconditional and sole ownership of the property, both at law and in equity, it must be represented to the company, and so expressed in the written portion of the policy, and such interest correctly described, otherwise this company shall not be liable," etc. "Any fraud, or attempt at fraud, or false-

swearing, on the part of the assured, shall cause a forfeiture of all claim under the policy."

The application which is made a part of this policy affixed a valuation of $300 to the storehouse, but no valuation whatever to the personal property insured. The following questions and answers are contained in the application.

" 5. Are the stoves and apparatus for using fire properly secured, and will you engage to keep them so? Yes."

" 6. If the stovepipes pass through wooden partitions or floors, how are they secured? Tin safes."

" 10. What is used for lighting? Oil and candles."

" 14. What is the title? Good."

" 15. Is your property incumbered? If so, to whom and to what amount? No."

The answer avers that the policy was obtained by false and fraudulent misrepresentations of plaintiff, especially in his answers to the 5th, 6th, 14th and 15th questions in his application as above set out, and that the property was burned through the fault of plaintiff, and denies that the property destroyed was of the value averred in the petition, and denies the averments of the petition as to the adjustment of the loss, and sets up that no proof of loss or oath of the assured, as required by the policy, was furnished defendant.

Upon the issues as thus presented the jury returned a general verdict for plaintiff for $833.33, and a special verdict in answer to the interrogations as follows: " What was the value of the dry goods, groceries, yankee notions, hardware and other property destroyed by the fire? Give the value of each kind as well as the value of the whole. We, the jury, find the whole amount of goods to be $700. We cannot find the estimate of each kind of goods for want of evidence."

" What was the storehouse worth on the 21st day of

December, 1866 (date of application), and what was it worth when burned? Cash value of the house at both dates, $200."

"Was the store-house and the land on which it was situated paid for at the time the insurance was effected and in whom was the title? Title in B. S. Bonham."

Plaintiff remitted $133.33 of the verdict and judgment was rendered for plaintiff in the sum of $700.

Defendant appeals.

*Polk, Hubbell & Barcroft* for the appellant.

(No appearance for the appellee.)

BECK, J. — I. The defendant moved the court below for judgment on the special verdict of the jury because
1. INSURANCE: it is inconsistent with the general verdict, and over-valuation. finds facts which defeat plaintiff's right to recover.

This motion was overruled; and this ruling is assigned for error. It is claimed by defendant, that, by the special verdict, it appears that plaintiff made such false representations and over-valuations of the property as by its terms avoided the policy. The jury find the building to be of the value of $200.

The application of plaintiff fixed its value at $300. Without inquiring whether this is over-valuation or simply the result of a difference of opinion in regard to the value, we conclude, under the provisions of the policy, it is no defense to a recovery thereon.

By its terms a recovery for the loss of the building can be had only to the extent of two-thirds its cash value. The valuation in the application in no manner fixes defendant's liability, for it is not two-thirds of that value which by the terms of the policy defendant is to pay in case of loss, but two-thirds of the cash value at the time

of the loss. Neither would this valuation have the remotest influence upon defendant in taking the risk, and in no way could fraud or deception have been practiced by the plaintiff by an over-valuation.

The defendant, in writing upon the risk, assumed a liability to be determined as to the amount, by two-thirds the value of the property at the time of loss thereof; if any should occur. The valuation in the application is not in the nature of an appraisement or of an agreement, and defendant is in no way bound thereby. According to the express provisions of the policy, "the amount of the loss or damage is to be estimated according to the actual cash value of the property at the time of the loss." The only effect of an over-valuation and over-insurance would be to increase the premium received by defendant. If, in issuing policies of this form, defendant's agents and officers do not encourage over-valuation and over-insurance, they have ability to resist temptation not usually found among men. It is the policy of underwriters to require the assured to carry a part of the risk upon the property they insure; hence they usually insure for not more than two-thirds or three-fourths of the value of the property, but they are liable in case of loss for its full value, if insured to that extent, unless there is some provision in the policy restricting the extent of liability, as in the policy sued on. Where there is no such restriction, an over-valuation may operate to deceive and defraud the underwriter.

The application upon which the policy was issued purports, by its express terms, to be a full and true exposition of all the facts and circumstances in regard to the condition, situation, *value* and risk of the property when issued, so far as the same are known to the applicant and are *material to the risk.*" Under the terms of the policy, the defendant being liable for two-thirds of the value of

·the property at the time of the loss, the valuation on the application was not a fact material to the risk. *Lee* v. *Howard Insurance Co.*, 11 Cush. 324.

In case the valuation be considered in the nature of an ·express affirmative warranty, it is of a matter which in no way changed or increased the risk, nor by any possibility could have increased the liability of defendant, and which, in fact, was no inducement to the contract, nor .was it the foundation of fraud or deception on the part of plaintiff.

This court would hesitate to hold that a warranty so immaterial, in truth so perfectly disconnected from the subject of the contract and its conditions, should operate to defeat the policy. No such snares should be hidden away in these intricate and yet very common contracts, whereby to entrap the unwary.

While agreeing in the conclusion arrived at, but without fully concurring in the reasoning of this opinion upon this branch of the case, a part of the court are content to place the ruling upon the ground that the record does not disclose that the over-valuation was fraudulent on the part of plaintiff, and, therefore, does not defeat the policy. In this view it is thought that, while the finding of the jury does in fact establish an over-valuation, yet in the absence of a finding that the over-valuation was purposely or fraudulently made, the mere finding of an over-valuation (which might have been the result of a difference of opinion) is not sufficient alone to defeat a recovery upon the policy.

It is claimed that the finding of the jury as to the value of the personal property, or rather their verdict to 2. VERDICT: the effect that they were unable to find the special findings. values of the different kinds of property insured, is inconsistent with the general verdict. It appears that the total value of these goods as found by

Bonham v. Iowa Central Ins. Co.

the jury is equal to the amount allowed by the verdict on account of the loss thereof. Neither the policy nor the application states the value of the different kinds. We are not authorized to conclude from the verdict that the value of each kind did not equal the amount allowed on account of the loss thereon. Did such fact appear from the special verdict it would be inconsistent with the general verdict, but it does not appear and cannot be presumed.

II. The defendant assigns for error the decision of the court in overruling the motion for a new trial, which was INSURANCE: misrepresentation of title. based upon the grounds that the law was incorrectly given to the jury, and that their finding was not warranted by the evidence.

The instructions to the jury are fair expressions of the law in regard to the warranty in the policy, of the condition of the stoves and stovepipes, of the title to the property, etc., and give proper construction and full force thereto. It is claimed that the court erred in instructing the jury, substantially, that if the plaintiff had purchased and partly paid for the property, and was in possession thereof, and no lien for the purchase money, or incumbrance of any other character was held against it, though it had not been deeded to him, he held the absolute and sole ownership of the property within the meaning of the terms as used in the policy. This instruction is correct.

The instructions asked for by defendant were either substantially the same as those given upon motion of plaintiff, and were for that reason refused, their repetition being unnecessary, or were properly refused because in conflict with the law. The principles involved in these instructions do not require discussion. The verdict is supported by the evidence and must be sustained.

III. The court, being asked so to do by defendant, refused to require the jury to return an answer to the fol-

**4. SPECIAL VERDICT: refusal of court to give.** lowing question, viz.: "Had the plaintiff a deed for the land on which the storehouse stood at the time he procured the insurance or at the time of the fire?" In this refusal there was no error. The fact intended to be elicited by the question was immaterial. The ownership of the property contemplated by the terms of the policy may have been held by plaintiff without a deed. In fact, the absolute fee simple title may be acquired and held in some cases otherwise than by deed.

Exceptions to the ruling of the court below, involving other questions, were taken by defendant. Such objections are not renewed in this court, either in the assignment of errors or in the brief of the counsel, and are, therefore, not before us for our consideration.

Affirmed.