ELIZABETH OWEN v. N. P. CHRISTENSEN, Executor of the Estate of Richard Owen, Deceased, Appellant.

**Estoppel:** ESTATES: *Widow.* Where, after a widow sued her husband's executor for the amount due on a certificate of deposit as her individual property, she applied for a year's support, stating that she was seventy-eight years of age, unable to work, and had to be cared for by a nurse, and that all she possessed in her own right was involved in the suit, and the allowance was made, and paid from the money due on the certificate, these facts did not amount to an election to treat the certificate as assets of the estate so as to estop her claim to it, where she did not ask that the allowance be paid out of the certificate and stated in the application that same was her property.

**Evidence:** DECLARATIONS: *Harmless error.* Where a widow sued her husband's executor for property she claimed in her own right, and a witness testified that at the time he drew the husband's will she declared in his presence that the property belonged to him, evidence of the husband's reply, was admissible, not as a declaration in his own interest, but to show, if he also stated it was his,

that she acquiesced, but the exclusion of such evidence was harmless, however, since it was merely cumulative, and added nothing to the weight of evidence already given.

Plea and proof: *Fraud.* Where a widow sued her husband's executor for property she claimed in her own right, the proceeds of a farm he had conveyed to her, evidence that plaintiff did not have the means to buy the farm from the husband was inadmissible, there being no charge of fraud.

Instructions. An instruction that if the evidence showed that plaintiff and her husband treated certain paper as their joint property, and each permitted the other to exercise ownership over it, it would authorize a finding that each had a half interest and that any interest that either had inconsistent therewith was relinquished to the other, did not tell the jury that proof of such facts was conclusive of joint ownership, but only that they might find it therefrom, and is not bad for assuming the establishment of a controverted fact.

Trial: quotient verdict.    The action of the jury in aggregating the several amounts which the different jurors are in favor of awarding as their verdict and dividing their result by twelve will, while not to be commended, not avoid a verdict thus obtained where 'there was no previous agreement to abide by the result of the computation and the amount was afterwards discussed, before it was assented to as their verdict.

*Appeal from Audubon District Court.*—Hon. W. R. Green, Judge.

Monday, October 17, 1898.

Action at law to recover the amount due on a certain certificate of deposit, and for the possession or proceeds of a certain promissory note, of which certificate and note the plaintiff alleges that she is the owner, and that the defendant has converted the same to his own use, as executor of said estate. The defendant answered, claiming that said certificate and note are the property of said estate. Verdict and judgment were rendered in favor of the plaintiff. Defendant appeals.—*Affirmed.*

*I. L. Statzel* and *De Lano & Meredith* for appellant.

*Nash, Phelps & Mosier* and *Wonn & Noon* for appellee.

Given, J.—I.  Appellant's counsel state the facts as follows, which statement is sufficiently accurate for the purposes of the questions to be considered: "Richard Owen died on August 9, 1895, and the plaintiff is his widow. He left a will, and the defendant is the executor thereof.  Prior to his death he had owned 160 acres of land, but he conveyed this to the plaintiff October 9, 1884, and the consideration expressed in the deed was one dollar and other valuable considerations.  About the 1st of March, 1890, this land was sold and conveyed by them to one Emly, and the consideration of $4,290 was deposited in the bank and certificates of deposit issued to Richard Owen therefor.  In October, 1890, Richard Owen and his wife went on a visit to England, and one of these certificates. for $1,290, was cashed, and some money added to it, and a foreign draft issued to Richard Owen for $1,800.  In December, 1891, the balance due on the other certificates of deposit was transferred to a bank in Exira, and certificates of deposit were issued therefor, made payable to Richard Owen and Elizabeth Owen. After their return from the trip to England, and on July 1, 1891, Richard Owen purchased a house and lot in Exira with the money he had taken when they went to England, and perhaps some portion of that left in the bank; and the title to this property was taken in the name of Richard Owen, and he still held this property at the time of his decease.  On December 6, 1894, there had been loaned to Thos. F. Musson $500 of this money in the bank at Exira, and a note taken payable to Mr. and Mrs. Owen or order, and this note was unpaid at the time of the death of Richard Owen.  At the date of the death of Richard Owen there was outstanding one certificate of deposit dated June 4, 1895, for $2,400, and on which there had been one payment made July 26, 1895, of $100.  After his death, and prior to the appointment of the executor, the certificate was in the possession of the plaintiff; and there were three payments made to her during that

time, aggregating $320. After the appointment of the executor, and on October 12, 1895, this certificate of deposit was surrendered to the executor by the plaintiff, but there is a wide discrepancy as to the object and purpose of this transaction. It appears that at the date of the surrender of the old certificate of deposit to the executor a new certificate was issued, and made payable to the executor; and the inventory of the executor shows that this last certificate of deposit, the Musson note, and a few items of personal property comprised the entire personal estate of Richard Owen, deceased. In November, 1895, the plaintiff filed her application with the court to have an allowance made for her support for one year out of the estate of her husband, and also an application to have the exempt property set off to her; and both of these applications were granted by the court, and $250 ordered paid by the executor for her support. The amount was paid out of the deposit represented by the certificate of the bank, and the personal property, outside of the certificate and Musson note, was set off to her as exempt property of her husband's estate. The plaintiff brought this suit to recover from the executor the balance of this certificate of deposit and the Musson note; claiming that they were her individual property, and not the property of her deceased husband, and that the executor had no right to them or their proceeds. The jury found that the plaintiff was entitled to $1,269 of the $1,775 due from the bank on the certificate, and that she was entitled to one-half of the Musson note. But on the ruling on the motion for a new trial the court required the plaintiff to remit all in excess of $878 due on the certificate of deposit, which was done, and the plaintiff had judgment for $878 and the costs. The jury found specially that the plaintiff was entitled to one-half of the Musson note, and, as it was then uncollected, judgment was suspended until it was paid in. From the judgment awarding the plaintiff $878 out of the certificate of deposit, the defendant appealed."

II.   Appellant's first complaint is of the following part of the sixth instruction: "If it be shown by the evidence that each of the parties treated the property in question as belonging to them jointly, and each permitted the other to exercise ownership over the same, this would authorize you to find that each had a one-half interest in the property in controversy, and that any right or interest which either had inconsistent with such interest had been relinquished and given to the other." Appellant insists, as a matter of law, "that the mere exercise of these acts of apparent joint ownership did not constitute a joint ownership in fact, and the court was not warranted in assuming that they did." It is argued that in this part of the instruction the court usurped the province of the jury, and many authorities are cited, from this and other states, holding that it is error for the court to assume that any controverted fact is established. There is no controversy as to the law, but only as to its application to this case. While acts of apparent joint ownership are competent to be proven, and may be sufficient to establish such ownership, they are not conclusive of it. The part of the instruction objected to does not assume anything as to the disputed facts, but simply directs the jury that if it is shown that each party treated the property as belonging to them jointly, and permitted the other to exercise ownership over it, this would authorize the jury to find a joint ownership. The jury was not told that such act would be conclusive as to the question of joint ownership, but only that it might therefrom find such ownership. In other parts of the same instruction, and in other instructions, it was made plain to the jury that the acts of the parties with respect to the ownership were not conclusive, yet proper to be considered in determining the issue as to ownership. Attention was directed in the seventh instruction to all the circumstances of which there was evidence. As we view it, the instruction complained of assumed nothing as to the facts in dispute, and therefore the authorities cited by appellant are not applicable.

III. After the commencement of this action the plaintiff applied to the court in probate to be allowed two hundred and fifty dollars for her year's support as widow of Richard Owen, deceased. As showing the necessity for an allowance, she said in her application that she was seventy-eight years of age, and unable to work, that she had to be cared for by a nurse, and that all the property she possessed in her own right was involved in this suit. The allowance was made, and the executor paid it out of the money represented by the certificate of deposit in controversy. Appellant insists that by asking and receiving this allowance the plaintiff is estopped from claiming owership of the certificate; that by so doing she elected to treat the certificate as assets of the estate, and should not now be heard to claim it as her own. The fault of this contention is in assuming that the plaintiff conceded in that application that the certificate was an asset of the estate. On the contrary, she showed, as a reason why she needed the allowance, that the certificate and note, her only property, were tied up in this litigation. She did not ask to be paid an allowance out of the certificate or note, but out of the estate. True, it appears by the inventory that there was no other personal property out of which to pay the allowance, but the deceased left a residence property that possibly might have been available. Surely it cannot be said that plaintiff admitted by her application that the estate owned this certificate and note, when in that application she states them to be her own property. There was no inconsistency in plaintiff's claiming the allowance to which she was entitled from the estate, and at the same time claiming ownership of this certificate and note. If she had asked the allowance to be made out of this particular property, it might be otherwise, but her application negatives such a claim, and we fail to discover any inconsistency between her claim of ownership, as asserted in this action, and her application for an allowance for support as made to the probate court. Defendant's counsel cite many authorities on

the subject of estoppel, each of which differs materially in its facts from this case, and they are therefore not in point. Under the facts of this case there is no estoppel, and there was no election between inconsistent remedies.

IV.   The defendant, Christensen, was examined on behalf of the defendant, and testified that he was called upon to prepare the will of Richard Owen, and that at that time he asked the plaintiff who owned the property, and she said it was her husband's property, and that she wanted him to dispose of it as he saw fit.   He further stated: "We were talking about the Musson note, the money deposited in the bank, the house and lot in Exira. The plaintiff said it belonged to her husband, and she made no claim to this money in the bank, the Musson note, or any other property spoken of in that conversation."   Witness was then asked: "What did Richard Owen himself say when you asked him the question as to who was the owner of the property, and she made that kind of an answer?"   This was objected to as incompetent, immaterial, and calling for a declaration of a party to prove his own interest, and the objection was sustained.   Ordinarily the declarations of a party, made in his own interest, are not admissible to establish that interest; but, where the declaration is made in the presence and hearing of his adversary, it is admissible, not because of what is declared, but because of the manner in which the declaration is treated by the adversary.   If Mr. Owen stated in the hearing of this witness that this property was his, and she acquiesced in that statement, it would be evidence against her, because of her acquiescence.   Under this rule, the witness should have been permitted to answer the question, but we think the ruling was without prejudice to defendant.   Let us assume that Richard Owen acquiesced in the statement of the plaintiff that the property was his, or that in her presence Richard Owen affirmed that the property was his, and plaintiff acquiesced therein; we have only cumulative evidence to that already given, and of a character that

could add nothing to its weight. The defendant was seeking. to establish an admission by the plaintiff that the property belonged to her husband, and Mr. Christensen had testified that she so stated. Now, the defendant complains that at the same time he is not permitted to prove the same fact by showing that plaintiff acquiesced in Richard Owen's claim of ownership. While we think the court should have permitted the question to be answered, the refusal was without prejudice to the defendant. The defendant sought to show by Mrs. Baker that the plaintiff did not have the means with which to buy the land conveyed to her by her husband, which evidence was excluded on plaintiff's objection.

There was no error in this ruling, as there was no charge of fraud in the conveyance of the farm, and no issue to which such evidence applied. It was undisputed that Mr. Owen conveyed the farm to his wife, as he had a right to do, without valuable consideration.

V. Defendant's remaining complaint is of the manner in which the verdict was arrived at. It appears by the affidavits of a number of jurors that after they had agreed to find for the plaintiff, and when considering as to the amount, it was agreed that each juror should mark the amount he was willing to allow on his ballot. This was done, and after the ballot was taken the several amounts were added, and the sum divided by twelve, which gave the quotient one thousand two hundred and sixty-nine dollars. It appears that after this was done this sum was not agreed to, but the jurors proceeded to consider further as to the amount, and after a half hour's consideration, and efforts to agree upon an amount, it was then agreed that said sum of one thousand two hundred and sixty-nine dollars should be the amount of their verdict. As we have said the marking of the ballots and the adding and dividing of the aggregate amounts were without any previous agreement that the amount arrived at should be the verdict. In *Hamilton v. Railway Co.,* 36 Iowa, 31, this court said: "To render invalid a verdict

arrived at by aggregating the several amounts which the different jurors are in favor of, and dividing the result by twelve, there must have been an agreement on their part in advance to be bound by the verdict thus obtained. If the verdict was arrived at in this way without any such agreement, and it was afterwards discussed and assented to as their verdict, it would not be invalid." See, also, *Sullens v. Railway Co.*, 74 Iowa, 659. On passing upon defendant's motion for a ncw trial the court required the plaintiff to remit three hundred and ninety-one dollars from the amount of the verdict, or submit to a new trial. The plaintiff elected to so remit, and to take judgment for eight hundred and seventy-eight dollars. We do not think that this action of the court is in confirmation of the claim that this was a quotient verdict, and the defendant (appellant) is not complaining that the *remittitur* was made. While the course pursued by the jury is not to be commended, it is not, in view of the cases cited, ground for reversing this judgment. As we find no prejudicial error in the record, the judgment of the district court is affirmed.